May it please the Court, James Siegel on behalf of Appellant Lummi Nation. I'd like to reserve four minutes of my time for rebuttal. Okay, please watch the clock. Judge Bolt found that the Lummi had treaty rights to fish in their usual and custom grounds, which included the marine waters of Puget Sound from the Fraser River south to the present environs of Seattle. The question here is whether that description was intended to encompass the Puget Sound waters south of Fidalgo Island and east of Whidbey Island. So those geographic points and others are illustrated by the map on page four of our opening brief. No party here disputes the waters contested here are literally the waters of northern Puget Sound, nor can there be any question they're between the two endpoints that Judge Bolt delineated. So that's the Fraser River, which is north in Canada, and the environs of Seattle, which is south, has been determined to refer to Edmonds. So the question here is whether Judge Bolt meant something other than what he said. And the requesting parties have to actually demonstrate that Judge Bolt didn't mean the plain meaning of his words. He didn't mean to include these northern Puget Sound waters within his finding that the Lummi fished and had rights to fish in the waters of northern Puget Sound. And so the requesting parties have attempted to meet that essentially entirely by asserting there was no evidence before Judge Bolt upon which he could have based his conclusion that the Lummi fished and had rights to fish in these waters. This court has never before allowed a tribe to subvert the plain text of Judge Bolt's order simply by nitpicking the evidence before him that supposedly would not have supported that conclusion. But even if there is some basis for setting aside the plain text of Judge Bolt's finding, looking for evidence that was before him, it only confirms that he meant what he said. And so Judge Bolt relied in large part on the report of Dr. Barbara Lane, who was an expert anthropologist. And she described Lummi fishing throughout the waters of Bellingham Bay, Whatcom Creek, Nuiqsut River, all of these waters which are to the north of Fidalgo Island. She described these waters as the principal fisheries of the Lummi, the home territory, the these extended south to what is now Anacortes. And Anacortes is on the north of Fidalgo Island. And then in the immediately succeeding paragraph of her report, she said, in addition, Lummi fishermen were accustomed to fish in the Puget Sound waters to the south. And that description necessarily encompasses the waters here. Again, there's no question these waters are in Puget Sound. They're also directly to the south of Fidalgo Island, which Dr. Lane had just described as being the home territory of the Lummi. And so her description necessarily provides some evidence that would have supported Judge Bolt's conclusion that the Lummi fished in these northern Puget Sound waters. And then the next page of Dr. Lane's report, she confirmed that reading. She said the Lummi fished in the Straits and Bays south to the present environs of Seattle. So again, that's well to the south of the waters disputed here that's been determined to refer to Edmonds, which is south of these waters. So that is evidence that Judge Bolt could have and apparently did rely on in finding that the Lummi fished in these disputed waters. And it confirms that he meant what he said. And it precludes the requesting parties from meeting their burden of showing that no evidence could have supported his conclusion. That's not even the sum total of the evidence. There's more evidence. There's also an affidavit, the 19th century Alaska Packers case, in which one of the affiants described Lummi fishing throughout the lower sound and at all points where the fish were running. That's again, that would provide a basis for Judge Bolt to conclude that the Lummi were fishing in these northern Puget Sound waters. We know that he relied on this affidavit because he said it. In finding effect 46, we determined the Lummi's usual custom grounds. There's also evidence of travel, just based on the geography of this area and Dr. Lane's descriptions of the various places where the Lummi fished. Judge Bolt could have inferred that the Lummi would have traveled through these waters, which again, directly to the south of the Lummi's territory in and around Fidalgo Island. That includes that they fished in the freshwater fisheries that emptied into Fidalgo Bay and Padilla Bay, which are directly to the north of one entrance to these disputed waters. They also had a reef netting site off of Fidalgo Island, directly to the north of the other entry to these waters, the Deception Pass. Judge Bolt could have easily inferred that traveling from that home territory to the environs of Seattle, as Dr. Lane described, Lummi would have passed through these waters. That's essentially the same rationale that this court applied in concluding that the Lummi have rights to fish in the waters west of Whidbey Island and Anniversary Inlet in the Lummi 1 and Lummi 3 decisions. So there, this court first and... But these are waters east of Whidbey. That's correct, Your Honor, yes. And is it your position that they've traveled through them north-south, down through them? Because it's kind of hard to get into it from the north. Well, so, Your Honor, they're traveling canoes, I think, is one thing to keep in mind. And so, the Swinomish Slough, which is the point coming from Padilla Bay down into Skagit Bay, if you're looking at that map, that was known as the Canoe Passage. So they would have had no difficulty in traveling through these waters. Is that going through another tribe's area? Yes, Your Honor, but there's nothing before Judge Bolt that would have suggested that Lummi wouldn't have been able to travel through another tribe's area. So Dr. Lane described how tribes frequently travel through each other's areas. They shared usual and custom grounds with one another, particularly when there were kinship ties or other close familial ties. But what language in the decree, if you could point me specifically to it, does Judge Bolt suggest that they were traveling north-south, east of Whidbey, as opposed to the much more accessible and wide area to the west of it? Well, so, we described Lummi fishing in the northern Puget Sound waters from the east of Seattle. The Frazier River is all the way up and it's a very wide area coming down, and you would not... I'm just looking at it, you would not think that that means you're gonna go through the narrow little pass through the side, as opposed to the very broad area to get between the north and the south from Frazier to the environments of Seattle. So again, I think it's helpful to keep in mind that they're traveling canoes, so the width of the area is not a significant impediment. And it's also that the waters east of Whidbey Island are sheltered, so they might have actually been a more favorable travel path. But I think it's also... Is there any evidence on point? So you have the travel route evidence, and then I think you cite Forrest Dutch Kintley, who says, I have fished in Whidbey Island South. But is there anything more specific about... That would have... And before Judge Boldt, that they fished to the east of Whidbey Bay? I think the most on point evidence is Dr. Lane's description of lummi fishing in the Puget Sound water south of Anacortes. And how does that help? Because these waters are in Puget Sound, so there's no dispute that these waters are in Puget Sound. We use a different approach when it's broad areas of marine waters, and we have concluded that it does include every point between the two geographic anchors. And so we look at other evidence, including travel route evidence. And so I was just inquiring as to what you thought the best evidence was that, in fact, the east of Whidbey Island is one of the areas between the broad anchors that was traveled. So I think if you look at the logic of Lummi One, which is where this court first articulated that travel route logic and concluded that Amelty Inlet would be one passage, referred to A passage, not B passage, A passage from which the lummi would have traveled from their grounds in the San Juan Islands, which are to the west, to the south, to the environs of Seattle and Edmonds. I think that same logic applies here. And that... So Judge Boldt, again, he described lummi fishing in their home territory directly to the north of Fidalgo Island and the entrance to these waters. So in particular, in Fidalgo Bay, Padilla Bay, Bellingham Bay, he even emphasized in finding effect 46, that the lummi fish particularly in Bellingham Bay. That's directly to the north of these waters. So the most direct route from those waters south to the environs of Seattle would be through these waters east of Whidbey Island. And if the court has no immediate questions, I would reserve the balance of my time for rebuttal. Alright. May it please the court, my name is Lauren Rasmussen for the Port Gamble Sklallam and Jamestown Sklallam Tribe. We would like to reserve two minutes for rebuttal. Okay. Please watch the clock. Yes. So as you have heard, the court is being asked to look at all the references in the case and make assumptions. What is the natural route for tribes? Who their friends and family are? All of these questions are not in the record. All these answers are not in the record. All we have is a map at ER 1044 that shows you all the geographical markers. And they're asking you to guess. And the judge is being asked to guess. And so the Port Gamble Sklallam and Jamestown Sklallam Tribes are in a unique position here as real parties in interest and interested parties. And we're concerned that this case has taken such a divergence from its original purpose of looking at the treaty language and finding out where there was actual evidence where tribes fished on a usual and a custom basis at treaty times. And because of the Lummi 1, 2, 3, and 4 cases, we moved from actual evidence to this idea that the court is looking at these places on the map and trying to figure out what's most logical in a canoe at treaty times for the fishing. And I would hazard a guess that the court feels somewhat uncomfortable trying to see what was natural for Indian tribes. There's a lot of reasons they would take one route over the other. What were they fishing for? Where would they be attacked? Their enemies, their friends, their family. And the court doesn't have enough evidence to decide one way or the other. This is why the court in Lummi 3 just simply threw up... Lummi 1, 2, 3, and 4 simply threw up its hands and said, well, it's just as likely they went this way and as they did not. As a result, the Lummi are now correct. We fought with them for 30 years that the standard had no basis in the treaty, and we lost. And now the court connects Admiralty Inlet to Haro Strait as if the tribe traveled in a canoe picking up halibut along the way, and that is the state of the law of the case. So the reason we are on Lummi's side of this proceeding is not because it's just, it's because that's the state of the law of the case. You do not need any proof of actual fishing. The record in our case using USA 30, and the record in this case using USA 30, and both analyzing finding of fact 46 should come out exactly the same if we're applying the law of the for the endpoint of the environs of Seattle, which is on the east side of Whidbey Island. And had my colleague come up in my case and said, it's more likely that we went on the west side of... East side of Whidbey Island, we probably would have prevailed. But they saved that argument until they prevailed in our case. So the reason we are here is the court in making its decision decided to throw us it's exactly the same, but it didn't want to give Lummi the benefit of its essentially misleading the court that one way was more likely than the other, and then switching. But it didn't feel it had enough evidence to find for estoppel, which we obviously disagree with. So it made up facts that were not at all in the record. And if you look at the court's decision at ER 13, ER 23, and ER 25, you have three references that we dispute are not based in the record. The primary... What is the relief that you're asking us to give you? We would like the court to eliminate the false statements that Lummi primarily traveled on the west side of Whidbey Island, and that all tribes traveled as the main north south thoroughfare between Fraser River and Seattle. So as I understand it, you would like us to delete or modify a couple of sentences? Yes. And do you have standing? Yes, and I'm very much aware of your honor's position on the standing question, and the fact that we need to establish standing again, because you're concerned that we do not have an injury in fact. Our injury in fact, is that this rewriting of the history violates the treaty terms of usual and accustomed. They are adding people to our historical area, adding tribes, and essentially creating, putting I5 in front of the Sklallam villages. And they're saying this is the main north south thoroughfare for all tribes. And we said to the court, that's not based in the record. You cannot put all tribes in our UNA on the west side. In the course of that decision, we clarified that all tribes didn't mean all tribes, but meant something that's more narrowly tied to the record. That would kind of looped your claim for relief, wouldn't it? Well, I wish it were so, but after the court said, I don't have jurisdiction to rule on this, nothing the court said in the order on reconsideration denying it has any legal precedent. So when you state that there are misstatements or factual misstatements in the district court's order, or statements that are not supported by the record, are you referring to it solely to its statement that tribes, that the main route was on this west side of Whidbey Bay, or is there something else? So I have three statements on ER 23, 13, and 25 that refer to the primary travel route, the preeminent travel route, and the most logical travel route. And all of these statements will be used and to change the prehistorical relationship, the pre-treaty relationship between the Sklallam and the other tribes in US... And you're saying that those statements are not supported by the record? They are absolutely not stated by the record. And if you look at them, Judge Martinez doesn't even cite anything for all three of them, but then goes on to say, oh, it's just like the situation in Suquamish. And because Suquamish was found to travel on the west side of Whidbey, that means all tribes traveled on the west side of Whidbey, which is absolutely factually inaccurate. I need to save some time, so I will... But going back to my point, it's in the course of our deciding the dispute that's before us between the other tribes, we happen to clarify these three sentences. Would that then move any issue of whether or not we need to decide whether you have standing? Well, I think you could... In other words, the clarification you're looking for could be accomplished in the other dispute without having to decide whether you have standing to show up here. I mean, absolutely. In my real party and interest hat, I can ask you to rule on equitable estoppel or how they're estopped, but you can't change the order at my request under U.S. v. Green Law unless I separately appeal. And everybody here knows that rule, and so that's why we did it, and that's the law of the case here. Suquamish separately appealed when they appealed our decision in Sub Proceeding 05-2, because they wanted to change the ruling of the court, the rationale of the court. So that's... I mean, it's a difficult situation, because had we not appealed, I'm pretty sure that my opponents would stand up here and say, well, they can't ask for a change in the order because they didn't appeal. So in an abundance of caution, we followed the law of the case, which says that we have to appeal separately if we wanna change in the order, and we followed Green Law, and we followed this court's orders that said we didn't need to reintervene because we were already parties. So thank you, your honors. I guess I don't have any time for rebuttal. Thank you. We'll give you a minute for rebuttal. Okay, we'll hear from the other side. Good morning, your honors, and may it please the court. I'm Emily Haley, appearing on behalf of the Swinomish Indian Tribal Community, arguing for the appellees today. Can you move the podium down a bit, and I think that will help... Oh, sure. I was also worried about that. To see and hear you. Great, thank you. Is that better? Yes. Okay. Judge Martinez found that Judge Bolt did not intend to include the secluded waters to the east of Whidbey Island in Lummi's UNA, and this court should affirm for four reasons. First, the law of the case and the doctrine of finality require affirmance based on the facts of this case. Number two, Lummi's UNA is ambiguous on its face for two reasons. First, it doesn't specifically name any of the disputed waters, and second, all of the places it does name are to the west, not the east, of Whidbey Island. Third, there's no evidence in the record that Lummi was ever present in these waters, let alone customarily fishing. And fourth, there are fundamental differences between these waters that mean that the court should reach a different result here than it did in Lummi one and three. I'd like to start with ambiguity. The court has repeatedly emphasized the importance of geographic features and anchors, and Bolt specifically named about a dozen places. They were all to the north or west of the disputed waters, and that alone is sufficient to show that the finding is ambiguous as to those waters, and that he did not intend to include them. It's also ambiguous on its face because of the places he did name were all to the west or north of Whidbey Island. So is there any basis for distinguishing his determination as to the west of Whidbey Island from as to the east of Whidbey Island? Is there evidence in the record that's the opposing counsel's argument, that there is no basis for making that distinction? Yes, there is, Your Honor, and there is. And it gets to this issue that the waters on the west and the waters on the east are fundamentally different. Dr. Lane did make general statements about Lummi fishing south of its homeland and fishing between the Fraser River to the present environs of Seattle. She also made statements about the Straits and Sound being thoroughfares and the Straits and Sound being highways. But this general evidence is not enough to overcome the lack of specific evidence. Your Honor asked about whether there's anything specific in the record that demonstrates Lummi fished there, and the answer to that is no. And so what Lummi is relying upon instead are these generalities and an argument that it hypothetically could have traveled through these waters. So the argument, as I understand it, or at least one argument by opposing counsel is that that was exactly the same situation with respect to the west of Whidbey Islands, that there wasn't any specific information, but the court inferred that that was the travel route. Well, I think there's a couple of problems with that argument. Number one, this court has interpreted those statements. And so in Lummi three, the court looked at the statement related to Puget Sound in the south. It looked at the statement related to public thoroughfares in the deeper saltwater areas, the sounds, the strait, the open seas. And it concluded that those statements referenced waters on the west side of Whidbey Island between the San Juan Islands and the present environs of Seattle. It's never indicated that those statements apply to the inside water and the upper Saskatchewan. But what was the basis of those statements? Some evidence in the record or only the evidence of that there was travel? So there is a basis in the record, Dr. Lane's opinion, that those waters... But she doesn't differentiate between west and east, is that correct? No. Not explicitly, but in her general report, she does distinguish between open waters with free access fishing and closed waters with restricted fishing. And I don't have the record citations in front of me right now, but I can get them to you. But would that distinction change the analysis? I mean, essentially, in our cases, the Lume case is saying that the west area was part of the usual and custom fishing, was based on a conclusion that that was a travel route. I'm not sure that that conclusion that was a travel route was based on anything other than looking at the map as opposed to actual evidence. And so the argument, as I understand it, is if we're just eyeballing the map, we can do the same for east of Whidbey Island as well. Right. So Lume 3 actually addresses this issue. It specifically references the statement about Puget Sound in the south. It specifically references the statement about the deeper saltwater areas, etc. And it ties those statements to the west side of Whidbey Island. In contrast, it's never held that those statements apply to the east. Well, it hasn't held that it doesn't either. So that's what we're here for, right? Right. I think that that's right. But the other thing that Lume cases did is they did make a determination as to where was the most natural likely travel path. But that determination was not based just on geography. It was based on the geographic anchors that Dr. Lane talked about and that Judge Bolt talked about in his finding. All of those anchors are to the west of Whidbey Island. The Fraser River, as Judge Collins pointed out, is far to the northwest. The present environs of Seattle has been interpreted to be a small town called Edmonds, and that's also to the southwest. And this court has held that the most direct route between them is on the west side. One of the problems with Lume's reliance on these general statements from Dr. Lane is that general evidence cannot overcome a lack of specific evidence in the record of fishing. And I think that this is an issue that you're getting too, Judge Ikuda. There's a number of cases where the courts have found that tribes asserting UNA in particular waters did not have UNA in those waters because there was no specific evidence of them fishing there. The Muckleshoot Three case is an example of that where the court found that the Muckleshoot tribe has UNA at Elliott Bay because there was some evidence that they descended the Duwamish River system and gathered shellfish there. But Lane's general statements about trolling on the beaches of Puget Sound were not enough to get them UNA beyond there because there was no specific evidence of that. And the same is true in both Upper Skagit One and Upper Skagit Three where Suquamish relied on Lane's general testimony about travel to try to establish UNA in some of these same waters that we're talking about today. And the court again rejected that, saying that that general evidence is not sufficient to overcome the fact that there was no specific evidence in the record that Suquamish ever fished in those waters. And the same is true here. This case is virtually identical to those cases. In those three cases and this one, Judge Bull used language that appeared very broad. In those three cases and this one, he didn't specifically name the waters at issue. In those three cases and this one, Dr. Lane extensively documented where these tribes fished and she did not document any fishing in the disputed waters. And as I've already mentioned, in those cases as well as in Lummi One, the court has held that the general evidence cannot overcome a lack of specific evidence of customary fishing. And there is no such evidence here. And the map that Mr. Siegel referenced is actually a perfect visual depiction of that. It's at Lummi's reply at page four. And as you'll see, all of the Lummi fishing locations as well as its travel path exists in a single unbroken line from the Frayser River through the San Juan Islands, excuse me, through Admiralty Inlet and the other waters west of Woodby down to the present environs of Seattle. In contrast, that map doesn't show any fishing locations or travel path on the inside. Those yellow dots are not fishing locations or travel path. It's where the Lummi wants this court to allow it to fish. And the other thing that's interesting about that map is that it demonstrates that the outside waters and the inside waters really are fundamentally different. If you look at the map, all of the waters to the west side of Woodby, up in the San Juan Islands, from the Frayser River down through Woodby to the present environs of Seattle, those are wide open waters. And they especially appear that way in comparison to the waters on the east, which as this court found, are nearly enclosed or inland waters with narrow and constricted exits, two of which were controlled by Swinomish at treaty time. So even if we would agree with you that Judge Bolt did not assign the areas east of Woodby to the Lummi UNA, would that foreclose a future A6 proceeding to resolve that issue? Your Honor, I don't think the question of whether Lummi's entitled to an A6 proceeding is properly in front of the court. In an earlier decision in this case, the panel found that a tribe that had not complied with prefiling requirements did not establish jurisdiction to have this court look at that question. And Lummi didn't comply with prefiling requirements. It didn't raise this issue in the district court. It wasn't briefed in the district court. Judge Martinez didn't consider it in the district court. And so in Swinomish's view, that issue is not properly before this court. If the court were to address it, I think that the court would need to look to Muckleshoot 1. And that case is a really important case because it holds that Lummi's UNA was, quote, specifically determined albeit using language that is ambiguous, and goes on to hold that because Lummi's UNA was specifically determined, Lummi was not entitled to supplemental proceedings under A6 to alter, amend, or enlarge its UNA. And as the court in Muckleshoot 4 pointed out, that should have been the end of the matter. I want to speak briefly about the importance of finality in this case. Judge Bolt specifically determined this in 1974. The Muckleshoot case holding that it was specifically determined was in 1998. Ms. Rasmussen indicated that there have been over three decades of litigation regarding Lummi's  to this court. And we're here today arguing about the same questions. Is it specifically determined? Is it ambiguous? Is there record evidence to support it? All because Lummi's decided that it wants to fish in waters that it didn't live in, it didn't travel in, and it didn't fish at treaty time. Since 1974, the law of this case has been that tribes only have UNA in the places they customarily fish. And that was the standard of review, or standard of proof, excuse me, that was applied to all 21 tribal plaintiffs when they tried to establish their UNA. And those plaintiffs had to come forward with specific evidence of fishing in order to get UNA. And here there is no evidence. And so Lummi's relying on these generalities and this hypothetical travel path. But travel doesn't establish UNA, and there's a number of cases that say that. But the finding of fact is broad enough to include it. Isn't that the starting point? Finding of fact 46 is broad enough to include east of Whidbey Bay, just as it's broad enough to include west of Whidbey Bay. So I don't understand that argument. I mean, we're looking at the language in finding of fact 46. Well, I think I don't... This court's precedent doesn't just look at the plain language that Judge Bolt used, and it doesn't look only to geography to interpret these findings. It has to look to the evidence in the record to determine what he meant and what he intended to include. And in this case, we know that he meant something other than the apparent meaning of the language he used, because there is no evidence that Lummi customarily fished in the eastern waters. Okay. Ruling that Lummi has UNA in places it did not fish at treaty time would violate the plain language of the treaty, violate a half century's worth of law of the case, and be deeply unfair. It would cause chaos in the fisheries, and this court should not... Should continue to follow the existing law of the case and find that UNA in these waters, because it didn't customarily fish there. Thank you. Okay. Hello again. David Hawkins, General Counsel for Upper Skagit. I don't believe I'll need all of my time. I appreciate it. I just want to address one point at a minimum, maybe two, that Lummi's counsel represented to the court, and perhaps when they come back up, they can clarify this. But I believe we made a statement that said, Dr. Lane says they fished in Puget Sound in waters south of Anacortes. If you look at the report, we can't find anything that says that. The most southern point that we have Barbara Lane placing Lummi is at... About Anacortes, a little bit further south, in Fidalgo Island, there's a reef net site there. Can you speak up a little bit? I'm sorry. So we just take issue with whether or not Barbara Lane ever placed them fishing south of Anacortes or Fidalgo Island. That's important here. You point out perhaps the most difficult thing in this case, and this is the issue of how does Lummi get from northern Puget Sound to the environs of Seattle, when the only reference to the environs of Seattle was made by Barbara Lane, when she specifically said that was post treaty activity. Now, we have to live with the fact that Judge Bolt included that, but that's the dichotomy that we're struggling with here. How does Judge Bolt fit that language in, even though Dr. Lane said it only relates to post treaty fishing? We have a determination, however, based on geography, not fishing, that that included Admiralty Inlet. And that path then takes them from Fidalgo Island down through the waters west of Woodby to Admiralty Inlet. Admiralty Inlet is on the east side of Woodby Island. So the natural path isn't to go into the west side, it is to travel... I'm sorry. My fault. It is to travel on the west side of the island, not the east side. So the opposing council mentions canoes could just as easily... You know, that's funny. I live up there, and Deception Pass has tides that fluctuate. I mean, the waters there are just incredibly treacherous. You have to be very, very careful. So the idea that they would take canoes through those waters as a preference to traveling on the outside belies the reality of those waters. The other thing it belies is the reality that those were protected waters. Those waters, like rivers almost, here you've got an area that's encompassed within a land mass almost entirely on the east and the west. There were villages in all of those areas, and tribes protected their resources. And from Lummi in particular, because Lummi is noted in a lot of the ethnography as being a place where the water was very, very deep, there were no craters when they would come down. And so these areas weren't just come and fish in these areas. They were protected. So not only do you have no evidence of fishing, you don't have a natural path, and you have other cases that have found these areas are not part of Puget Sound. Puget Sound was found to be ambiguous in Upper Skagit 1 and 2. In Upper Skagit 1, Suquamish was trying to do the same thing, saying, Well, when we went up north, we went on the inside. The court said, No, Puget Sound's ambiguous. These waters are not part of Puget Sound. And so they denied the relief that Suquamish was asking for. We would ask that you continue that precedent. Thank you. Thank you. Mr. Siegel. Thank you, Your Honor. I think the response there, the last few questions really highlights what we're sort of just taking a step back. What we're doing here is interpreting Judge Bolt's plain language and trying to figure out what he said, and that has to be based on the evidence before him. What evidence in the record shows that the Suquamish ever granted permission to canoes to go through this area and allowed fishing east of Woodby? So there's no evidence in the record that even before Judge Bolt, at the time he found the Lummies UNA, that suggested that the Suquamish controlled these waters and wouldn't have let the Lummie in. So that evidence that was referred to in the Upper Skagit 1 case came in after in a subsequent proceeding. So that evidence that's sort of relating to the control of those waters or anything that counsel just referred to with respect to deception pass, none of that is before Judge Bolt at the time he made these determinations. I don't know where the reference to Lummies being raiders comes from, but that's not anywhere in the record before Judge Bolt. With respect to the ability to pass through these waters, there's two entrances. One of them is Suquamish Slough. That's directly next to the Lummies' home territory in and around Fidalgo Island. But where was the record evidence before Judge Bolt that the Lummie were fishing east of Woodby Island, but what there was, was south of Fidalgo Island. And so counsel again just said he didn't know where that came from. It's at ER 554. And so this is Dr. Lane's report. She said, the traditional fishing areas discussed thus far extended for what is now the Canadian border south to Anacortes, and that's on Fidalgo Island. And then there's another slight omission. Then the next paragraph is, in addition to the home territory discussed to this point, Lummie fishermen were accustomed, at least in the early earlier, to visit fisheries as distant as the Fraser River in the north and Puget Sound in the south. And so these waters here are the Puget Sound waters to the south. And so counsel has represented that there needs to be specific reference to Skagit Bay, Port Susan, Saratoga Passage for particular sub areas, but that's not the standard. The question is simply what Judge Bolt could have thought, and it's... The Fraser River is all the way up in the north, Puget Sound in the between, no matter what route you would go, and that's actual evidence of actual use of all those areas? So general evidence, as this court held in Lummie III, is some evidence, it's before Judge Bolt, there doesn't need to be specific evidence regarding particular waters. All there has to be is some basis, and then this court has used the phrase, fragmentary happenstance, some basis for Judge Bolt to infer that Lummie might have fished in these waters. And so again, Fidalgo Island is what she described as the home territory. Sort of like saying, I've been to America, and that means I've gone all 50 states. Well, I know, Your Honor, I think it's the equivalent of saying I've been... I can't think of a good analogy, Your Honor, but I don't think that's quite right. So Judge Bolt didn't describe Lummie fishing or didn't find Lummie fishing south of the environs of Seattle, but he found that they fished in the Puget Sound waters between the Fraser River and the environs of Seattle. And so there's been a contrast that Lummie I and Lummie III decisions. I just think this question was what Judge Bolt meant by Northern Puget Sound, whether he would have thought that that included the waters to the west of Whidbey Island. Did you have any evidence other than... That was before Judge Bolt, other than Dr. Lane's report of... By members of the Lummie tribe that they actually fished east of Whidbey? Well, so there was one Lummie elder that described fishing in Whidbey Island, but the Dr. Lane's report is really the key evidence here. There's also the declaration we mentioned, but Dr. Lane's report is the key evidence here, and it's what Judge Bolt primarily relied on. But again, I think that it's important to keep in mind that the standard of proof here is much lower than it would be in an ordinary civil case. This court has repeatedly found, and it's the requesting party's burden to show that there's no evidence whatsoever that could have led Judge Bolt to include these waters. And again, what they're trying to show is that he didn't mean the plain meaning of his words. So the counsel for Swinomish talked about the need for finality. Requesting parties are the one who are trying to chip away at the... The UNA granted the Lummie in 1974, trying to say that Judge Bolt didn't mean what he actually said, and they're trying to show that he could not have meant that because there was no evidence before him. But again, there's evidence of Lummie fishing in the Puget Sound waters to the south of Fidalgo Island. Dr. Lane said that they fished in Puget Sound to the south of their home territory. And that alone, that might be a broad description, but it's still some evidence that would support Lummie fishing in those waters. Thank you, Your Honor. Thank you. Ms. Rasmussen. Well, that's a lot to unpack, and I have no time, and I disagree with everybody here. First of all, none of these cases... And I have a lot to say for someone who apparently doesn't have an interest in the proceeding, so I'll just write back at you. These cases are exactly the same. And Lummie ingeniously planned its strategy to start with establishing that the presence in Byron's of Seattle was Edmund's. And then they slowly and meticulously went for the most broad ruling as possible, and the most broad interpretation is that you connect the dots and you'd naturally proceed through Admiralty Inlet. I'm gonna tell you something that was a reversal of a summary judgment motion, and it should have been remanded for actual evidence of fishing in Admiralty Inlet. And instead, Judge Hawkins found that it was just as likely. So that's how we got here. There never was any evidence. And then they meticulously bootstrapped Admiralty Inlet all the way up the west coast of Whidbey Island through the Strait of Juan de Fuca, which in Lummie One was not supposed to be their UNA. They weren't supposed to fish at all on the west side of Whidbey. But nevertheless, we lost. We lost to this court. We said, they are prohibited from fishing in the Strait of Juan de Fuca, and you just gave them a path all the way through the Strait of Juan de Fuca. But why we're here is that five wrongs don't make a right. You can't now make that the primary transit route for all tribes. Enough is enough. That's our area. It has to stop there. We cannot be looking at the natural transit route. We can't be asking you to look at a map as a judge and telling me that it was geographically more natural to go through the Strait of Juan de Fuca, which, by the way, has eight foot swells. I mean, we are not the experts. This case, I asked for the court to let me do an A6 and go back and say, it is ambiguous. Let's put actual evidence on. And Judge Martinez said no. And I said, well, there's no evidence. Either way, how are you gonna decide? And he said, no, you cannot file a new complaint. So that's why I'm here. The reality is, is that Lummi meticulously planned this and they don't have to show any evidence. We appreciate your argument. Thank you. Alright. The case of Sonomish Indian Tribal Community versus Lummi Nation and Stiligwamish Tribe of Indians is submitted and we're now in recess for this session or adjourned for this session.
judges: IKUTA, COLLINS, Fitzwater